MUNN & COMPANY

*v.*

AMERICANA COMPANY et al.

[Decided January 12th, 1914.]

1. A contract gave defendant company the right to use the name of the "Scientific American Compiling Department" in the sale of defendant's encyclopedia, and by way of compensation required that each subscriber

to the encyclopedia should be a subscriber to one of complainant's papers in order to receive the encyclopedia at the special price, and provided that a year's subscription to the paper was to be a part of the contract with each subscriber, defendant's part of such subscription to be $2, which was a reduction of one-third from the regular subscription price, the same to be paid to complainant in advance at the time the subscription began. The contract further provided that the agreement was to continue a year from March 1st, 1905, during which time defendant guaranteed a minimum of ten thousand yearly subscriptions to the Scientific American or Scientific American Building Monthly, and to be renewed if mutually satisfactory.—*Held*, that such contract of guaranty was not a contract for the sale of ten thousand copies of the paper, so that, on breach thereof, the measure of damages would depend on the profit or loss by reason of not supplying the minimum number at the reduced price, but was a contract of guaranty incident to a contract for an account to be made as compensation for the reduction in price of complainant's paper and the use of its name, and the guaranty fixed the minimum amount to be due yearly on the accounting.

2. Defendant's contract to furnish a minimum of ten thousand annual subscriptions for one of complainant's papers at a specified price contemplated a running account, requiring a yearly demand for settlement for any deficiency in order to entitle complainant to recover interest on the loss sustained by any annual default, and a failure to demand interest at any time during an informal continuance of the contract barred the addition of such liability to that expressed in the contract under which the parties continued to act, and which did not provide for interest.

On further hearing on application for decree for account.

*Mr. Franklin W. Fort,* for the complainants.

*Messrs. McCarter & English* and *Mr. McKenna,* for the defendants.

EMERY, V. C.

At the hearing upon the decree for account, I concluded (for reasons given in a memorandum) that complainant was entitled to an account in this court for the amount due under the contract of 1904, but were not entitled to an account in this court, either for profits derived from the use of the name "Scientific American" or for loss or damage sustained by its wrongful use, these being purely claims for unliquidated damages.

On this further hearing to settle the decree for account under

the contract, complainants waive any account for any amount due beyond the minimum sum of $20,000 per year, which they claim to be due under the contract, from which yearly sum is to be deducted the amounts already paid. On this waiver they ask now final decree for the deficiency in the yearly payments, with interest, without reference to a master. Defendants claim that the contract does not guarantee or agree to pay any specified sum yearly, and that their only liability to complainants under the contract is for the loss or damage sustained by their breach of the contract guaranteeing ten thousand yearly subscribers, and as to this claim, they insist that if it is not altogether a claim for unliquidated damages, and therefore not within the jurisdiction of the court, it must in any event be a matter for inquiry upon an accounting, and that no decree can now be directed for the payment of any certain or guaranteed sum under the contract. If complainant's claim, that the minimum sum of $20,000 is payable yearly, is well founded, and all further accounting is expressly waived, then a final decree for the payment of the minimum sum which is in all events payable, may be now directed to be made as the full amount due on an account taken under the bill.

The decision of the question, whether there is a minimum yearly sum payable, depends altogether upon the legal construction of the contract of 1904. This contract, which gave to the Americana Company the exclusive right to the use of the name of the "Scientific American Compiling Department" during its continuance, required, by way of complainant's compensation therefor, that each subscriber to the encyclopedia should be a subscriber to one of complainant's papers, in order to receive the encyclopedia at the special price, and as to the payment to complainants and the manner of securing it, it was provided:

"*Third.* A year's subscription to the Scientific American Building Monthly is to be a part of the contract with each subscriber, and your part of such subscription to be $2, the same to be paid by us in advance at the time the said subscription begins;" also,

"*Fourth.* This agreement to begin March 1st, 1905, to continue to March 1st, 1906, during which period we guarantee a minimum of ten thousand yearly subscriptions to the Scientific American or the Scientific American Monthly, and to be renewed if mutually satisfactory."

On May 12th, 1906, the contract was, by endorsement, formally extended for one year from March 1st, 1906, to March 1st, 1907, to be renewed if mutually satisfactory, and thereafter was continued without any formal writing, but by mutual consent and co-operation, until June, 1911. The regular yearly subscription price for either of complainant's publications was $3, and the general object of the contract was recited in its opening clause, viz., "Desiring to extend the subscription list of the Scientific American and also the sale of the Encyclopedia Americana." These two clauses, *third* and *fourth,* construed together, make a contract by which the Americana Company agreed that they would deliver to complainants at least ten thousand subscriptions, during each year, for complainant's papers, from subscribers to the Americana, and pay from time to time to complainants during the year the sum of $2 for each subscription as taken. These subscriptions to complainants' papers thus to be delivered to complainants by the Americana Company, were contracts, not with the Americana Company, but contracts made directly between the subscriber and the complainant, and upon the delivery of each of these contracts of subscription by the Americana Company to the purchasers of the encyclopedia, complainant was entitled to receive $2, a reduction of $1 from the regular subscription price, made for the purpose of extending the subscription list of the Americana as well as the complainants' papers. The present contract therefore, as between the parties, is not to be treated on the basis of an ordinary or simple agreement of the Americana Company to purchase of complainant, or of complainants to sell or supply to the Americana Company, complainant's papers to the extent of ten thousand, at the specified price of $2. On the breach of the purchaser of such ordinary agreement for purchase and sale, the rule of damages for not taking goods agreed to be taken, might apply, and under this rule, only the loss by reason of not receiving the minimum number of subscriptions or papers at the price fixed would be recoverable, in the absence of any other provision of the contract as to damages. But this rule does not apply to a contract of this character under which, as it seems to me, the questions whether

complainants would have made losses or profits by furnishing ten thousand papers at $2 each, and what sum it would have cost them to supply the minimum number, are not material. The reason is this. The contract was not intended to be a contract merely on the basis of the purchase by the Americana Company of the complainant of at least ten thousand subscriptions at a specified price, but was, on the complainant's part, a contract to co-operate with the Americana Company for the mutual extension of their subscription lists, and for this purpose, the entire consideration given by complainant was (1) the reduction of its regular subscription price to the extent of one-third in favor of the subscribers to the Americana, by which reduction, the complainant to that extent co-operated with the Americana Company in its plan of offering to proposed subscribers the inducement of a free gift of one year's subscription to complainant's paper: and (2) the exclusive use of the name "Scientific American Compiling Department" in the enterprise of selling the Americana in connection with the offer of free subscriptions to complainant's paper. The execution of these agreements on complainant's part as to consideration began at once upon the operation of the contract, and the Americana Company thus received, and continued to receive during the operation of the contract, all the considerations or benefits to which it was entitled under the contract. The consideration or compensation which complainant was to receive for these two concessions on its part, becoming effective against it at once, was (1) the right to receive $2 in advance and from time to time as each subscription to the Americana was received, and the subscription to the complainant's paper delivered in connection therewith, and (2) the guarantee that there should be at least ten thousand of such yearly subscriptions, in which complainant's part was $2 each.

In a contract of this kind, the guaranteed minimum itself is in itself a measure of the compensation fixed by way of account between the parties for the reduction in price and the use of complainant's name in the enterprise. On breach of the contract to pay in advance $2 for each subscription delivered, and an accounting for the amounts due on subscriptions actually taken, it

would certainly be immaterial whether the complainant lost or made money by agreeing to furnish the paper for $2, nor could in such case any deduction from the $2 complainant was entitled to receive for each subscription be made for the expense of supplying the subscription. The payment of the full $2 without deduction, as complainants' part of each subscription taken to the Americana, applied as well to subscriptions in excess of ten thousand as to those under it, and certainly complainant's recovery on a claim for accounting for money received as its share, beyond the ten thousand subscriptions, would not be determined by reference to its profit or loss by reason of the price of the paper being fixed at $2, or be reduced by reason of the expense or cost of supplying the excess number. The agreement for a minimum number of subscriptions fixed, as it seems to me, in the same way and on the same kind of basis, the minimum sum complainant was to receive on an accounting, by way of compensation for the considerations and benefits at once received by the Americana Company, as soon as co-operation under the contract began. In other words, the contract of guarantee was a contract made as incident to and in connection with a contract for an accounting for definite sums received and as part of a contract for such accounting, and was made for the purpose of fixing a minimum limit on accounting. It was not an independent and separate contract by way of purchase and sale or supply of the minimum number of subscriptions. If this part of the entire contract be not treated on this basis of a contract to account, but as an independent contract of sale or supply, for breach of which damages are recoverable, then for breach of the contract to furnish at least ten thousand subscriptions at $2, the damages to complainants would include, as it seems to me, damages by reason of furnishing at $2 instead of $3, the regular price, all the subscriptions for which defendants have actually accounted. This would seem to be logically a loss incurred by reason of complainants' reduction of the regular price, in reliance on the agreement to furnish a minimum number, and a loss resulting from defendants' breach thereof. Manifestly such subsequent additional payment for subscriptions al-

ready furnished was not contemplated, as the result of a breach of the accompanying contract for a minimum number, and solely, I think, because the guarantee was intended as a guarantee to account for such minimum number, as part of the entire contract to account, made to compensate complainants for the consideration given by them to the defendants by way of reduction in price and use of their name.

Complainant waiving on this application for a decree for accounting, any claim to recover beyond the $2 for the minimum number of subscriptions guaranteed, is entitled to a decree that the amount due on the accounting is the amount of the yearly deficiency, and for payment of such sum.  Interest, however, cannot be allowed.  The minimum contract for a yearly number was a running account of a kind which required a yearly demand for a settlement of the deficiency, if it was intended that interest should be claimed.  The contract was renewed from 1907 until 1911, without any express formal agreement and only by the mutual action of the parties.  Where the promise to pay interest is implied only and not express, facts sufficient to support the implication must be shown. *16 Am. & Eng. Encycl. L.* (*2d ed.*) *1006.*  The failure to demand interest at any time during this informal continuance of the contract, prevents the addition of this liability to that expressed in the contract itself, under which they continued to act, and which did not provide for it, either originally or in the single written extension.